IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Statesville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **JAN M. BERKOWITZ,** | ) | Case No. 15-50673 |
| | ) | |
| Debtor. | ) | |

**BRIEF IN SUPPORT OF DEBTOR'S OBJECTION TO CLAIM OF TRANSASIA COMMODITIES INVESTMENT LIMITED**

Jan M. Berkowitz, the debtor and debtor in possession in the above captioned chapter 11 bankruptcy case (the "Debtor"), files this brief in support of his objection to the claim(s) of TransAsia Commodities Investment, Limited (the "Objection"). [Doc. 31]. In support of his Objection, the Debtor shows the Court as follows:

**I. FACTS**

TransAsia Commodities Limited ("TCL") is a company organized under the laws of the United Kingdom, which is separate and apart from TransAsia Commodities Investment Limited ("TransAsia Investment"). On December 20, 2013, TCL filed suit against NewLead JMEG, Ltd. ("JMEG"), NewLead Holdings Limited ("Holdings"), Michael Zolotas ("Zolotas"), and the Debtor in the Supreme Court of New York, case index number 654414/2013 (the "Lawsuit"). TCL asserted four claims against the defendants in the Lawsuit. Claim One was against JMEG for the breach of a contract for the sale and delivery of coal. Claim Two was a tort claim for fraud and fraudulent inducement asserted against all the defendants, including the Debtor. Claim Three asserted a claim for civil conspiracy against the Debtor and Zolotas. Finally, Claim Four sought the imposition of the alter ego remedy against Holdings, Zolotas, and the Debtor.

On or about October 14, 2014, administrators (the "Administrators") were appointed for TCL in England pursuant to the United Kingdom's Insolvency Act of 1986. On or about

November 7, 2014, TCL's Administrators sold all of TCL's rights to the claims in the Lawsuit to TransAsia Investment for the sum of £10,000 and a pledge of 25% of any sums recovered by TransAsia Investment less litigation costs. A copy of the deed of assignment memorializing the sale and other documents pertinent to the transaction are attached hereto as **Exhibit 1** and incorporated herein by reference.[1] Subsequent to the sale and assignment, the New York trial court substituted TransAsia Investment as the plaintiff in the Lawsuit. Aside from TransAsia Investment's role as the substituted plaintiff in the Lawsuit, the Debtor and TransAsia Investment have never had any dealings with each other whatsoever.

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court on October 12, 2015. Due to the pendency of the Lawsuit, the Debtor scheduled TransAsia Investment as the holder of a contingent, unliquidated, and disputed general unsecured claim of an unknown amount. *See Schedule F* [Doc. 25]. The Debtor filed the Objection to TransAsia Investment's claim(s) on November 30, 2015. The Debtor objects to any claim that TransAsia Investment might assert because it necessarily arises from the assignment of personal tort claims. Such assignments offend North Carolina public policy and are therefore unenforceable.

## II. ARGUMENT

**A.   Assignments of Personal Tort Claims are Unenforceable Because They Promote Champerty**

North Carolina law does not permit the assignment of personal tort claims. *BSN Med., Inc. v. Parker Med. Assocs. LLC*, No. 3:09CV15, 2011 U.S. Dist. LEXIS 130643, at *64 (W.D.N.C. Apr. 8, 2011) (Cogburn, J.); *Old Republic Nat'l Title Ins. Co. v. Welch (In re Welch)*,

---

[1] The deed of assignment was attached as an exhibit to an affidavit of TCL's counsel in the Lawsuit. TCL filed the affidavit on November 26, 2014 in support of its motion to substitute TransAsia Investment as the plaintiff. *See Exhibit 1* attached hereto.

494 B.R. 654, 660 (Bankr. E.D.N.C. 2013) (Leonard, J.); *Ivey v. First-Citizens Bank & Trust Co. (In re Whitley)*, No. 12-02028, 2013 Bankr. LEXIS 521, at *7 (Bankr. M.D.N.C. Feb. 7, 2013) (Stocks, J.); *TUG Liquidation, LLC v. Atwood (In re Buildnet, Inc.)*, No. 04-09003, 2004 Bankr. LEXIS 2383, at *29 (Bankr. M.D.N.C. June 16, 2004) (Carruthers, J.); *Investors Title Ins. Co. v. Herzig*, 330 N.C. 681, 688 (1992); *Horton v. New S. Ins. Co.*, 122 N.C. App. 265, 269 (1995). Courts often note that this prohibition is grounded in the public policy concern of avoiding the promotion of champerty. *See, e.g., BSN Med., Inc.*, 2011 U.S. Dist. LEXIS 130643 at *64. Champerty is the "officious intermeddling in a lawsuit by a mere stranger . . . involv[ing] an element of compensation for such unlawful interference by bargain for part of the matter in suit or some profit growing out of it." *Smith v. Hartsell*, 150 N.C. 71, 76 (1908). North Carolina law expressly prohibits champerty. *Munday v. Whissenhunt & Whissenhunt*, 90 N.C. 458, 460-61 (1884) ("It is a wise, wholesome and necessary provision of the law, justified by the experience of ages, that men shall not interfere in law-suits in which they have no interest, to help one party or the other in consideration of a part of the fruits of litigation.").

Moreover, North Carolina public policy prohibits the assignment of personal tort claims whether or not the particular assignment at issue is, in fact, champertous. For example, Judge Stocks held in *Whitley* that a bankruptcy Trustee did not have standing to bring claims assigned to him by creditors because those claims were personal in nature and therefore not assignable. *In re Whitley*, 2013 Bankr. LEXIS 521, at *7. District Judge Cogburn similarly dismissed a corporate plaintiff's claims based on fraudulent statements made to a business later acquired by the plaintiff, because the fraud claims were torts personal to the plaintiff's predecessor in interest and thus *per se* unassignable. *BSN Med., Inc.*, 2011 U.S. Dist. LEXIS 130643 at *65 (citing

*Investors Title Ins. Co. v. Herzig*, 330 N.C. 681, 688 (1992) ("the assignment of such claims violates our public policy and will not be enforced")).

Consequently, courts do not need to engage in any analysis of the champertous nature of a particular assignment of a personal tort claim before finding it prohibited. *See In re Midstate Mills, Inc.*, No. 13-50033, Docket No. 337 (Bankr. W.D.N.C. Dec. 11, 2013) (agreeing with a creditor's argument that North Carolina prohibits all assignments of personal tort claims because such assignments *promote* champerty, not because the particular assignment might be champertous); *see also*, *In re Midstate Mills, Inc.*, No. 13-50033, 2015 Bankr. LEXIS 3105, at *6 (Bankr. W.D.N.C. Sept. 15, 2015) (recognizing prior order disallowing settlement agreement because the settlement proposed to include an assignment of personal tort claims).

TransAsia Investment cites one case from the Middle District of North Carolina, *Clifford v. Dylan Mortgage, Inc.*, No. 1:04CV486, 2005 U.S. Dist. LEXIS 48754 (M.D.N.C. Sept. 21, 2005), for the proposition that an assignment of personal tort claims governed by foreign law should be honored in North Carolina courts unless the particular assignment is champertous. As an initial matter, TransAsia Investment twists the analysis in *Clifford* to suit its ends in this case, rather than discussing the Middle District's analysis in its entirety. Even under the logic of *Clifford*, however, TransAsia Investment's supposed claims against the Debtor are categorically unenforceable in North Carolina, as this brief will explain below. Additionally, contrary to TransAsia Investment's contention, the clear weight of precedent shows that *any* assignment of a personal tort claim is void as contrary to applicable North Carolina law. Because TCL's sale and assignment of personal tort claims to TransAsia Investments is wholly unenforceable in this forum, TransAsia Investment can hold no valid claims against the Debtor or his estate.

B.  **North Carolina Choice of Law Principles Do Not Allow Enforcement of TransAsia Investment's Alleged Claims Against the Debtor**

Three interrelated rules form the basis for North Carolina's conflict of laws analysis. First, the substantive rights of the parties are governed by the "law of the jurisdiction in which the transaction occurred or circumstance arose . . . ." *Charnock v. Taylor*, 223 N.C. 360, 361 (1943). Second, the procedures used in the administration of the case and the remedies available to the parties are controlled by the "law of the forum in which the remedy is sought . . . ." *Id*. Finally, ***"foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum***." *Boudreau v. Baughman*, 322 N.C. 331, 342 (1988) (emphasis added).

These principles of North Carolina law comport with the position adopted by the *Restatement (Second) of Conflicts of Laws*. Section 85 of the *Restatement* recognizes that "[a] state will not exercise judicial jurisdiction if it cannot provide appropriate relief." *Restatement (Second) of Conflicts of Laws* § 85 (1971). Section 90 of the *Restatement* adds that "[n]o action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." *Restatement (Second) of Conflicts of Law* § 90. As detailed above, the overwhelming majority of courts to consider the issue (both state and federal) have found that North Carolina's public policy concerns prohibit the assignment of personal tort claims. North Carolina courts therefore do not apply the law of foreign jurisdictions to allow the enforcement of assigned tort claims, because such assignments are contrary to North Carolina public policy. *See, e.g., TUG Liquidation, LLC v. Atwood (In re Buildnet, Inc.)*, No. 04-09003, 2004 Bankr. LEXIS 2383, at *29 (Bankr. M.D.N.C. June 16, 2004).

Judge Carruthers' decision in *In re Buildnet*, *supra*, is particularly instructive in this regard. There, the plaintiff was an assignee of personal tort claims against the debtor's insiders.

*Id*. at *10. The assigned claims were predicated on breaches of duty owed by the insiders to the debtor entity. *Id*. The plaintiff paid the debtor's estate the sum of $15,000 in exchange for the claims, and the parties entered into the assignment contract with the express approval of the bankruptcy court. *Id*. at *10-11. The defendant-insiders challenged the enforceability of the assignment after the plaintiff-assignee filed suit, on the grounds that the assignment violated North Carolina public policy.

In its analysis, the court noted that the disputed claims arose under Delaware law, which would authorize the assignment at issue. *Id.* at *27-29. Nevertheless, the bankruptcy court looked to *North Carolina* law to determine that the assignment (which it had previously authorized) was void. The court stated:

> In any case, North Carolina courts will not apply the law of a foreign state if it offends the public policy of the forum. *Boudreau v. Baughman*, 322 N.C. 331, 368 S.E.2d 849 (1988). Rather, ***courts will apply North Carolina law if the law of the other state offends North Carolina public policy***. *Clayton v. Burnett*, 135 N.C. App. 746, 749, 522 S.E.2d 785, 787 (1999). Because the Defendants contend that the Assignment offends North Carolina public policy, the court must examine North Carolina law to determine the validity of the Assignment.

*Id.* at *29 (emphasis added). Against this backdrop, the bankruptcy court correctly concluded that even the sale provisions of section 363 of the Bankruptcy Code did not preempt or overrule North Carolina's prohibition on the assignment of personal tort claims. *Id.* at *35-36. Thus, the claims were unenforceable. *Id.*

In its Reply to the Objection, TransAsia Investment emphasizes choice of law principles to argue that the laws of a foreign jurisdiction govern the validity of its purchase of TCL's personal tort claims, and that TransAsia Investment therefore has an enforceable claim against the Debtor in North Carolina. This argument is inapposite in the context of the Debtor's Objection. In this instance, the question is not the validity of the underlying assignment. The

question is whether TCL's sale of personal tort claims to TransAsia Investment offends North Carolina public policy. To answer this question, the Court need only examine the strongly held public policy of the State of North Carolina as expressed in the relevant precedents cited above. Such an examination shows that North Carolina courts would not enforce TransAsia Investment's purchased causes of action. The Court should therefore disallow TransAsia Investment's alleged claims against the Debtor's bankruptcy estate.

C. **The Sale of TCL's Claims to TransAsia Investments Is Unenforceable Because Their Assignment is the Very Essence of Champerty**

North Carolina law defines "champerty" as "a form of officious intermeddling in a lawsuit, whereby a stranger makes a bargain with a plaintiff to carry on a lawsuit." *In re BuildNet, Inc.*, 2004 Bankr. LEXIS 2383 at *29. Much like the transaction between TCL and TransAsia Investment, the North Carolina Supreme Court has found such "officious intermeddling" when there "was a stipulation for one-half of the recovery in consideration of services in the conduct and management of a lawsuit by one who was not an attorney at law and who had no interest whatever in the subject-matter of the litigation or its results, except what arose to him under and by virtue of the contract he was seeking to enforce." *Smith v. Hartsell*, 150 N.C. 71, 79 (1908).

TransAsia Investment wishes to distance itself from the overwhelming weight of such state and federal authority finding assigned tort claims unenforceable. To do so, it seizes on the decision in *Clifford v. Dylan Mortgage, Inc.*, No. 1:04CV486, 2005 U.S. Dist. LEXIS 48754 (M.D.N.C. Sept. 21, 2005), wherein the Middle District of North Carolina denied a motion to dismiss tort claims that had been assigned to the plaintiff. TransAsia Investment focuses its argument solely on the court's choice of law analysis (relating to certain insurance-related claims) and asserts that such an assignment, if lawful in a foreign jurisdiction, is enforceable in

North Carolina despite this state's ban on the promotion of champerty. TransAsia Investment's argument examines only one-half of the pertinent analysis, however, and misses the unique import of the *Clifford* decision entirely.

In *Clifford*, a group of plaintiffs instituted class action litigation in the North Carolina Business Court against HomeGold, Inc. ("HomeGold"). 2005 U.S. Dist. LEXIS 48754, at *2-3. HomeGold was an insured party under a policy issued by the American International Specialty Lines Insurance Company ("American"). *Id.* Initially, American agreed to reimburse HomeGold for the defense costs in the class action under the terms of the insurance policy. *Id.* at *3. American later ceased making reimbursements and refused to participate in any settlement discussions in the litigation. *Id.* Nevertheless, HomeGold subsequently entered into a settlement with the plaintiff class. *Id.* at *4.

Before making the required settlement payments, however, HomeGold filed for bankruptcy protection in South Carolina. *Id.* The North Carolina court appointed Donald Clifford to serve as a "trustee," to represent the interests of the plaintiff class in the South Carolina bankruptcy proceedings. *Id.* The South Carolina bankruptcy court then approved a settlement between the debtor and the plaintiff class, which called for a cash payment to the plaintiffs and an assignment of HomeGold's claims against American to Clifford, "for the use and benefit of the plaintiff class . . . ." *Id.* at *4-5. Clifford, as trustee, subsequently filed suit against American in North Carolina. *Id.* at *5. Certain of the claims asserted on behalf of the plaintiff class were torts that the debtor assigned to Clifford in the South Carolina bankruptcy proceeding. *Id.* at *27. American argued in response that the court should apply North Carolina law to the assigned tort claims, and find that Clifford could not pursue them because the assignment of personal torts is prohibited by North Carolina public policy. *Id.* at *26.

As an initial matter, the court applied various choice of law rules and concluded that South Carolina law governed the disputed assignment, as well as the merits of the assigned claims themselves. The court further found that South Carolina law (which draws a distinction between personal injury torts and torts to property) would allow the disputed assignment of Clifford's bad faith insurance claims as well. *Id.* at *30. Thus, the plaintiff's claims were not subject to dismissal based on North Carolina's choice of law rules standing alone. Asserting that its purchase of TCL's claims was lawful in another forum (the United Kingdom), TransAsia Investment leans heavily on this portion of the Middle District's analysis to support the argument that it holds an enforceable claim against the Debtor. However, TransAsia Investment fails to examine the *Clifford* court's public policy analysis altogether – which is critical in this case.

The *Clifford* court specifically found that the claims in the HomeGold litigation, an insurance dispute between companies in New York and South Carolina, did not implicate North Carolina's public policy ban on the promotion of champerty in any way, shape, or form. The court drew this conclusion because the assignee did not ***purchase*** the disputed claims. Rather, the assignee was a court appointed officer for the benefit of a plaintiff class, ***who did not pay money to the assignor in return for the claims***. The court explicitly stated that the case did not involve "any undesirable attempt by an individual ***to sell*** or assign his claims in a manner that promotes champerty." *Id.* at *28 (emphasis added). To the contrary, the court found that:

> Plaintiff was ***appointed as trustee*** by the North Carolina Business Court with specific authority to "hold all rights, benefits, choses in action, claims or causes of action associated with Mortgage Bankers/Mortgage Brokers Error & Omissions Insurance Policy no. 244-20-63 issued by American International Specialty Lines Insurance Company to HomeGold, Inc." In addition, the Bankruptcy Court in South Carolina specifically approved the assignment of these claims to Plaintiff. Thus, this assignment, which has been sanctioned by courts in both North Carolina and South Carolina, ***does not involve any aspect of champerty under North Carolina law***. In this respect, the Court concludes that while there may be some types of assignments that could violate North Carolina public policy, those

concerns are not directly implicated in the present case based on the *specific types of claims and parties presented here*.

*Id.* at *28-29 (emphasis added). The court upheld the assignment in this narrow instance, because it found the transfer of claims to a court appointed officer, for the purpose of representing the interests of the plaintiff class, could not implicate North Carolina's policy concern with discouraging champerty. In short, the plaintiff was not "trafficking" in personal tort claims.

In contrast to the assignment at issue in *Clifford*, TransAsia Investment's claims against the Debtor are the result of a clearly champertous sale agreement. The debtor in *Clifford* did not assign tort claims to the representative of the plaintiff class in exchange for payment. TransAsia Investment, on the other hand, paid £10,000.00 in exchange for TCL's claims and promised TCL a 25% contingency stake in the litigation. In *Clifford*, the assignment in question did not "involve any undesirable attempt by an individual to sell or assign his claims in a manner that promotes champerty." *Id*. at *28. In the present case, TransAsia Investment's purchase of the claims originally alleged by TLC in the Lawsuit is the very essence of champerty. It is an unabashed sale and assignment of personal tort claims. The "specific types of claims and parties presented here," *id*. at 29, therefore clearly implicate North Carolina's public policy of prohibiting assignments of personal tort claims for fear of promoting champerty.

The facts of the present case are nothing like *Clifford*, but are instead reminiscent of those considered by Judge Carruthers in *In re BuildNet, Inc.* As Judge Carruthers did there, the Court should find that public policy considerations require the application of North Carolina law in this case. *In re BuildNet, Inc.*, 2004 Bankr. LEXIS 2383 at *29. The Court should therefore disallow TransAsia Investment's claims because they are unenforceable under North Carolina law.

### III.  CONCLUSION

North Carolina law prohibits the assignment of personal tort claims.  This prohibition is grounded in the concern that allowing or enforcing such assignments promotes champerty, which is the illegal sale of such claims.  Even when personal tort claims are purchased under the auspices of foreign law that may allow such assignments, North Carolina choice of law doctrine requires that the foreign jurisdiction's laws not be applied because of public policy considerations.  Any claims TransAsia Investment may assert against the Debtor are the results of a transaction that is the very essence of champerty.  TransAsia Investment is plainly trafficking in tort claims.  As such, TransAsia Investment's alleged claims against the Debtor are unenforceable and should be disallowed in their entirety.

WHEREFORE, the Debtor prays the Court to grant the relief sought in the *Objection to Claim of TransAsia Commodities Investment Limited*, and for such other relief as the Court deems just and proper.

Dated:  Charlotte, North Carolina
          January 3, 2016

**MOON WRIGHT & HOUSTON, PLLC**

  */s/ Richard S. Wright*
Richard S. Wright (NC Bar No. 24622)
Caleb Brown (NC Bar No. 41131)
227 West Trade Street, Suite 1800
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing *Brief in Support Debtor's Objection to Claim of TransAsia Commodities Investment Limited* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated: Charlotte, North Carolina
January 3, 2016

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (NC Bar No. 24622)
227 W. Trade Street, Suite 1800
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
Facsimile: (704) 944-0380
*Counsel for the Debtor*